**PRUDENTIAL PETROLEUM CORPORA-
TION, Appellant,**

v.

**RAUSCHER, PIERCE & CO., Inc., Appellee.**

No. 14933.

Court of Civil Appeals of Texas.

Dallas.

June 3, 1955.

Rehearing Denied July 1, 1955.

John B. Stigall, Jr., and John F. Max-
field, Dallas, for appellant.

458

Carrington, Gowan, Johnson, Walker & Bromberg and Dan McElroy, Dallas, for appellee.

YOUNG, Justice.

This suit was instituted by appellee against appellant Corporation for an alleged conversion of corporate stock; charging that the latter had unlawfully refused to transfer on its books a certificate for 1,000 shares of Company stock, which number of shares had been sold by plaintiff as agent for Paul E. Bell to Stanley Pelz & Co., Inc., New York City. An interlocutory judgment by default was rendered against Bell, also named a defendant; and upon trial to the court after overruling of exceptions, judgment was likewise rendered against the Petroleum concern for $950, which becomes the subject of this appeal. Relevant to the controversy is Art. 1358–15, V.A.C.S. (Uniform Stock Transfer Law), providing: "There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there *shall be no restriction upon the transfer of shares* so represented by virtue of any by-laws of such corporation, or otherwise, *unless* the right of the corporation to such lien *or the restriction is stated upon the certificate.*" (Emphasis ours.)

Appellee is a Texas corporation, dealing in stocks, bonds, and other securities. In original petition it alleged that on about July 17, 1952, Paul Bell appeared at its Dallas office, requesting sale of Certificate No. 772 representing 1,000 shares of defendant Company stock, originally issued to O. R. Seagraves, March 31, 1952, together with the latter's endorsement in blank; Bell as owner instructing plaintiff to market same for $1,000 less brokerage and transfer tax; that pursuant to said instructions, plaintiff sold the shares to Stanley Pelz & Company, New York City, for $1,000, paying over to Bell as the proceeds of such sale the sum of $979.92; that a draft for $1,000 with stock attached was sent to Pelz & Company who declined to accept same, returning it to plaintiff with statement that defendant Corporation had refused a transfer of the said certificate on its books; giving as reason that no transfer of ownership would be made pending an offering of certain additional stock; that Bell had refused to return the consideration previously paid him for such stock by plaintiff; defendant's refusal to transfer continuing until there was no market for its sale; and that under terms of Art. 1358–1, et seq. such acts and omissions of defendant company constituted conversion of the stock to plaintiff's actual damage in sum of $1,000.

In first amended answer, defendant alleged as ground for refusing transfer of the particular stock that on the date of July 17, 1952 it was in process of selling 200,000 shares of capital stock at an offering price of $1.50 per share pursuant to exemption of Regulation A, Securities and Exchange Commission; that sale of any outstanding stock (as represented by Certificate No. 772) was in contravention of the exemption claimed, which fact should have been known to plaintiffs by use of reasonable diligence; aforesaid stock transaction (participated in by Seagraves, Bell and plaintiff) being also violative of sec. 5, U. S. Securities Act 1933, 15 U.S.C.A. § 77d. The 1,000 shares of appellant's stock in question shows O. R. Seagraves as record owner. His blank transfer was attached to this certificate, no restrictions upon transfer of shares appearing upon the face thereof.

Mr. John Rauscher, a representative of appellee, testified to receipt of the certificate of stock with appropriate endorsement; that on rejection of draft by Pelz & Company (July 21, 1952) he talked with the president of defendant company who stated that transfer of certificates of their capital stock Nos. 1 through 1,400 were not being made until a further offering, then in progress and beginning with Certificate No. 1,500, had been completed; in other words, confirming the refusal to transfer the shares and giving no other reason for the action taken. In connection with the testimony of John A. Howell, defendant's witness, and president of appellant company at time of trial, the following letter

was placed in evidence, signed by a former president, Norvel Douglas: "Stanley Pelz & Co. 52 Broadway New York 4, N. Y. Gentlemen:

"We have your form letter of June 13, 1952, in which you requested that we transfer Prudential Petroleum Corporation Stock Certificate No. 282 for 500 shares and Certificates Nos. 1562/64 and 1567/71 for 100 shares respectively.

"Certificates Nos. 1562/64 and 1567/71 are being transferred according to your request. However, Certificate No. 282 is being returned to you untransferred inasmuch as the Company's transfer books are now closed on all stock issued prior to May 21, 1952. At this time a stock issue of 200,000 shares, beginning with Certificate No. 1500, was placed on sale through John F. McBride Co., New York, and the balance of the issue has subsequently been assigned to Mitchell Securities, Inc., 52 Broadway, New York, New York.

"Prior to the recent public offering of 200,000 shares of the Company's capital stock, there were issued and outstanding 1,557,454 shares of said stock. All of the persons to whom this latter stock was originally issued signed letters to the effect that said shares were being held for investment and not for resale or redistribution to the public. These so-called investment letters were all filed with the Securities and Exchange Commission in connection with the qualification of the 200,000 shares for sale to the public.

"The Company, therefore, on advice of counsel, determined that during the period of the public offering and the subsequent stabilization period no stock, other than the 200,000 shares qualified for sale to the public, would be eligible for transfer on the books of the Company.

"As soon as the transfer books are opened you will be notified."

Further relevant to the contents of above letter, Mr. Howell testified: That in Spring of 1952 when the corporation sought to qualify its issuance of 200,000 shares under Exemption A, Securities Exchange Commission, there were outstanding more than one million shares denominated "Founders," "Venturers" or promoters stock; and that to obtain a clearance for public sale of the 200,000 shares it was the understanding with S. E. C., in accord with the mentioned "investment letters," that the Company records would be closed as to all transfers except said exempt issue. Aforesaid corporate books were reopened for free transfer of stock in November 1952, at which time there was no market for the 1,000 shares in controversy.

Points advanced as basis of appeal will be summarized: The court's error (1) in overruling special exception to effect that on face of plaintiff's petition, Art. 1358–1, et seq. V.A.C.S., is not applicable to this, a Delaware corporation, in that the statute is not operative without a showing on part of plaintiff that the laws of Delaware are consistent with such Act; (2) in overruling special exception to effect that plaintiff was not the proper party to complain of defendant's said acts or omissions, in that a securities broker, acting in capacity of an agent, cannot maintain an action for damages against a defendant corporation for a conversion of stock under the circumstances here alleged; (3) in admitting as evidence the Seagraves assignment or transfer of stock without requiring due proof of its execution by O. R. Seagraves; (4) in rendering a plaintiff's judgment in this, a suit for conversion, when there was a total absence of evidence that the purchaser of Stock Certificate No. 772, Stanley Pelz & Company, had ever presented same to defendant for transfer; (5) likewise in rendering judgment against defendant without proof of allegations contained in plaintiff's petition; namely, that Seagraves had sold the stock to Bell for a cash consideration, Bell purchasing in good faith without notice of restrictions upon the transfer; or that, at time of sale by Seagraves, the latter had executed an appropriate assignment on delivery to Bell; and (6) the judgment was further in face of preponderant evidence to this effect: "* * * that the action of the defendant

in-closing the transfer books was in accordance with a plan developed by the Securities Exchange Commission of the United States of America and the defendant, in an effort to avoid the violation of the provisions of the Securities Act of 1933, Act of May 27, 1933, 15 U.S.C.A. § 77a to 77aa; (the court) thus holding that an action for conversion may be maintained following an alleged refusal to transfer stock ownership on the stock transfer books even though such alleged refusal is not wrongful."

■■■■ Above points have been fully considered; disclosing no error deemed reversible in view of a record not materially in dispute. Our conclusions of affirmance will be rather categorical in form; following counterpoints of appellee which we approve as correctly stating the law applicable to the facts in this case. (1) In absence of pleading and proof to the contrary on part of appellant, the laws of a sister State are conclusively presumed to be the same as Texas law. Brand v. Eubank, Tex.Civ. App., 81 S.W.2d 1023; Roberts v. Magnolia Petroleum Co., 135 Tex. 289, 143 S.W.2d 79; Ross v. Beall, Tex.Civ.App., 215 S.W. 2d 225 writ ref.[1] (2) There are well-recognized exceptions to the rule that an agent may not bring suit in his own name or behalf, or for breach of contract concerning the subject matter of his agency; well stated in 2 Tex.Jur., sec. 166, p. 577: "* * * First, where the agent contracts in his own name; second, where the agent does not disclose his principal, who is unknown; third, where, by the usages of trade, the agent is authorized to act as owner of the property; fourth, where the agent has an interest in the subject matter of the contract,—and, in this case, whether he professed to act as agent or not. * *" Appellee holds this certificate of stock under general endorsements, having paid full consideration, less commission. With all indicia of ownership and right to possession, undoubtedly such a holder is entitled to maintain action for conversion thereof.

■■■■ (3) Appellant interposed no sworn denial of the execution of stock transfer by Seagraves in his sale to Bell as required by Rule 93, Texas Rules of Civil Procedure. Since such a denial may be made on information and belief, it is manifest that appellant was required to deny by affidavit the execution by these parties of their respective endorsements, if the point is to be raised; and that the rule goes further than merely requiring the denial of one's own endorsement. It has been so held. W. T. Rawleigh Co. v. Sherley, 165 S.W.2d 465; Graser v. Graser, Tex.Civ.App., 212 S.W.2d 859, reversed on other grounds, 147 Tex. 404, 215 S.W.2d 867. (4) Appellant is in no position to argue that plaintiff failed to prove proper presentation of Stock Certificate No. 772 to the corporation for transfer on its books under the undisputed facts of this record; for example, defendant's letter of June 16, 1952 that Company books were closed to transfers of stock of date prior to May 1952, pending public disposition of a later issue; its President Howell stating that in July 1952, the shares in question "could not be sold to transfer." The law does not require of a litigant the doing of a useless thing. Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509. Neither at time of the transfer nor in pleading did appellant raise the question of lack of formal presentation of this stock for transfer, constituting a waiver of objections on such other ground. Christy, The Transfer of Stock, 2d Ed., sec. 263; Hulse v. Consolidated Quicksilver Mining Corp., 65 Idaho 768, 154 P.2d 149. Furthermore, the objection is in nature of a plea of "an avoidance" (of liability) "or affirmative defense" and waived under Rule 94, T.C.P., unless expressly pled. (5) There was no restriction on face of the certificate in question against transfer pending conclusion of its

1. Dehors the record but otherwise relevant is the observation of appellee that in 1945 the State of Delaware enacted the Uniform Stock Transfer Act, Revised Code, Secs. 2048A to 2048X, 8 Del. C. §§ 181–202, with the result of identity of laws.

further public issue of stock; the instrument merely carrying the standard recitals "transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed." Appellant's witness Howell testified to methods that might have been adopted by defendant to advise a purchaser of the restriction against transfers, even under an exempt registration; its directors, however, ruling out such procedure and following a course prohibited by Art. 1358–15; the same witness admitting that S. E. C. had not ordered a closing of its transfer books. A refusal to transfer record ownership of corporate stock in the circumstances here presented results in liability as for a conversion thereof, at election of the complaining party. Baker v. Wasson, 59 Tex. 140; Gresham v. Island City Sav. Bank, 2 Tex.Civ.App. 52, 21 S.W. 556; Bower v. Yellow Cab Co., Tex.Civ.App., 13 S.W.2d 708, 35 S.W.2d 519.

All points of error are accordingly overruled and judgment of the trial court affirmed.