**EDINA STATE BANK, Plaintiff-Appellant,**

v.

**MR. STEAK, INC., and Central Bank and Trust Company, Defendants-Appellees.**

**No. 72–1291.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 20, 1972.

Decided Sept. 14, 1973.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 7, 1974.

E. John Abdo, Minneapolis, Minn. (Benjamin E. Sweet, Denver, Colo., on the brief), for plaintiff-appellant.

Sanford B. Hertz, Denver, Colo. (Robert W. Hite, Denver, Colo., on the brief), for defendants-appellees.

Before PHILLIPS, SETH and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Appellant Edina State Bank (the bank) sued Mr. Steak, Inc. (Mr. Steak) as the corporate issuer of stock and its transfer agent, Central State Bank and Trust Co. (Central), for damages for refusal to register transfer of pledged shares of Mr. Steak stock which the bank attempted to sell under its rights as

pledgee. Central refused to register the transfer due to advice by Mr. Steak that the shares had been purchased for investment purposes and without a view to redistribution. Mr. Steak also had instructed Central that no transfer could be made without notice to it and an opinion of counsel that the transfer would not violate the Securities Act of 1933 (the Act). No legend of any restriction on transfer appeared on the Mr. Steak certificates and the bank had been advised by Price, the pledgor, when it made the loans that there were no restrictions.

The bank relies on the provision of § 8–204 of the Uniform Commercial Code that a restriction on transfer imposed by the issuer is ineffective unless conspicuously noted on the security, except against a person with actual knowledge of the restriction. The trial court found that the bank relied on Price's statement that there was no restriction and thereby suffered the loss. In ruling against the bank the court concluded that the Securities Act pre-empted the field and governed instead of the Code provisions; that the federal act required no legend as to the restriction; that also as between the bank and Mr. Steak as innocent parties, a duty of inquiry should be imposed on the bank because it knew of Price's recent employment by Mr. Steak; and that such inquiry to Mr. Steak was not made by the bank. The trial court denied recovery for the bank's loss. We are unable to agree.

First, we turn to § 8–204 of the Uniform Commercial Code which we feel supports the bank's right to recover damages for its loss since Mr. Steak as issuer failed to note any restriction on the certificates and the bank had no actual knowledge of a restriction.[1]

The facts as they apply under the statute are mostly without dispute. In July, 1968, Mr. Steak issued 200 shares of its no par common stock to Price who was its employee. At that time and until April, 1969, no Mr. Steak shares had been registered with the Securities and Exchange Commission under § 5 of the Act, 15 U.S.C.A. § 77e. The shares involved in this suit were never registered. In July, 1969, a stock split occurred and Price was issued an additional 2400 shares. Neither certificate had any notation of any restrictive legend. Mr. Steak did not request an investment letter from Price when either certificate was issued. However, the trial court found that the stock was received by Price with knowledge it was restricted and being received for investment purposes only as an exemption stock. See 15 U.S.C.A. § 77d(2). The trial court concluded that since the issuer, Mr. Steak, had made this clear to Price, it had fulfilled its obligation to Price and the public.

The loan transactions with the bank that followed present the aspect of this case bringing § 8–204 of the Code into play. On March 5, 1969, the bank made a loan to Price of $15,000 which was secured by a pledge of Price's 2400 shares of Mr. Steak stock. The trial court's findings accepted the bank President's testimony that he inquired of Price whether there was any restriction and that Price said it was not restricted. The trial court found that the bank relied on Price's statement and referred to the bank as an innocent party, as it also described Mr. Steak.

In April, 1969, Price executed another note for a $6,600 loan, secured by the same stock. Again on May 5, 1969, Price obtained an additional $5,155.60 loan from the bank and it consolidated

---

1. No question is raised as to the applicable law and both parties cite § 8–204 and other portions of the Code which has been adopted in both Colorado and Minnesota, respectively the place of incorporation and principal place of business of Mr. Steak; and the place of incorporation, principal place of business and site of the loan transactions of the bank. See 7A C.R.S.1963 § 155–8–204 and 21C Minn.Stat.Ann. § 336.8–204. Under the Code provisions the law of Colorado, the jurisdiction of organization of the corporation whose stock is involved, governs. U.C. C. § 8–106.

the loans and Price signed a note for $27,000, secured by the same stock. Price later defaulted in payment of the loans.

On about June 3, 1969, the bank, attempting to secure its position, submitted 1,000 shares to a broker for sale for its account.[2] The brokerage house made two 500-share sales. The proceeds of $36,739.34 received by the bank were credited to Price's checking account, and the account was debited for $27,000 to pay the loans. Price used the balance in his restaurant business.

However, when the brokerage house requested registration of transfer to the purchaser, the transfer agent refused. Central said that Mr. Steak had advised it that the shares were purchased for investment and without a view to redistribution and that no transfer of the shares could be made without notice to Mr. Steak or its counsel and without an opinion of counsel that the transfer would not violate the Securities Act. Since the sale was forestalled the bank repaid the brokerage house in full and called on Price for the funds, which he could not repay. The bank then obtained a new note from Price for $37,000 to cover all the funds advanced to Price, again secured by the stock which the bank of course then knew was restricted.

§ 8–204 of the Code provides:

"Unless conspicuously noted on the security, a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with actual knowledge of it."

The comments on this section of the Code emphasize that it imposes a strict requirement for notice on the issuer. See Official Comment 1, 7A C.R.S.1963, § 155–8–204. This duty is similar to that imposed by § 15 of the Uniform Stock Transfer Act.[3] Since there was no legend conspicuously noting the restriction on transfer and no actual knowledge of it by the bank, we are persuaded the bank is entitled to recover under § 8–204 of the Code, as the court was under the similar provision of the Uniform Stock Transfer Act in Prudential Petroleum Corp. v. Rauscher, Pierce & Co., 281 S.W.2d 457 (Tex.Civ.App.) (ref.n.r.e.). See also General Development Corp. v. Catlin, 139 So.2d 901, 902 (Fla.App.); Haas v. Haas, 35 Del.Ch. 392, 119 A.2d 358.[4]

■ As noted the trial court concluded that since both the bank and Mr. Steak were innocent parties, it was proper to impose more of a duty to inquire than the bank undertook. The Court's findings point out that no inquiry was made of Mr. Steak, although

2. No issue has been raised as to the right of the bank to proceed as it apparently did before maturity of the $27,000 note, except the objections based on the restriction on transfer discussed in this opinion. See U.C.C. § 9–207(1) and (4) as to the rights of the pledgee respecting the collateral.

3. The Uniform Stock Transfer Act made unnoted restrictions invalid without the exception as to persons having actual knowledge of them.

4. As commentators have noted, Article 8 of the Uniform Commercial Code reveals a clear intent on the part of the draftsmen to confer "full negotiability" upon investment securities. See, e.g., Folk, Article Eight: A Premise and Three Problems, 65 Mich.L. Rev. 1379 (1967); Israels, Investment Securities As Negotiable Paper—Article 8 of the Uniform Commercial Code, 13 Bus.Law. 676, 677–78 (1958); Stop Transfer Procedures

And The Securities Act of 1933—Addendum to the Uniform Commercial Code—Article 8, 17 Rutgers L.Rev. 158 (1962); Lee, Impact of the Uniform Commercial Code on Colorado Law, 42 Den.L.J. 67, 101 (1965); Wickersham, Investment Securities under the Uniform Commercial Code, 1 B.C.Indust. and Comm.L.Rev., 37, 38; Comment, The Status of an Investment Security Holder, 33 Ford.L.Rev. 466, 467, 482 (1965). See also, Guttman, Article 8—Investment Securities, 17 Rutgers L.Rev. 158 (1962). And with respect to U.C.C. § 8–104, another commentator has observed that the Code "is consistent with a general modern trend which prevents corporations from taking advantage of their own lack of authority in their dealings with parties who are outside the internal framework of the organization." Carrington, Banking, Commercial Paper and Investment Securities Under the Uniform Commercial Code, 14 Wyo.L.J. 198, 217 (1960).

the bank inquired of Price and was found to have relied on his representation that there was no restriction. Appellees also point to admissions by the bank President that he made no inquiry of the Commission or of any brokers; that he knew that the stock was privately held and had no market and was "going to go public;" and that he did not know whether the Price shares were to be included in the registration statement. They say the record establishes a lack of due diligence. However, we think the Code provision in § 8–204 applies and that it clearly placed the duty on Mr. Steak as issuer to note the restriction conspiciously on the certificate, not on the bank to inquire. And the statute's protection was extended to all against an unnoted restriction except those with "actual knowledge of it." Those who are only on inquiry notice are not denied protection by the Code.

The trial court's view was that since the restriction had been made clear to Price, Mr. Steak had fulfilled its obligation to him and the public. We are convinced, however, that § 8–204 required more—that the issuer conspicuously note the restriction on the certificate for the protection of others. The bank as pledgee was among the persons protected generally by § 8–204 against a restriction not conspicuously noted on the security, except as to a person with actual knowledge. The wrongful refusal to transfer gave rise to a right to sue as for conversion by the bank as transferor. See Holly Sugar Corp. v. Wilson, 101 Colo. 511, 75 P.2d 149; Official Comment 1 to § 8–204; see also Case v. Citizen's Bank of Louisiana, 100 U.S. 446, 25 L.Ed. 695; Annotation, Remedy for refusal to transfer stock, 22 A.L.R. 2d 12, 34. We conclude that under the facts as found and shown by this record, the state law in § 8–204 of the Code supports the bank's right to recover against the issuer which failed to comply with the strict requirement of the statute.

Second, we consider the trial court's views concerning the Securities Act and arguments of Mr. Steak and Central related to them. The court concluded that the federal statute preempted the field and that to the extent there is any conflict between it and the Code, the federal Act will prevail. And the court held that Congress had not required a legend on the certificate as to restrictions on transfer so that its absence did not make the appellees liable for refusal to register the transfer.

The Securities Act of 1933, as amended, 15 U.S.C.A. § 77a et seq., does not impose a requirement for such a legend. It is recognized by the Commission's Releases Nos. 33–5121, 17 C.F.R. §§ 231.-5121 and 33–5223, 17 C.F.R. § 231.5226, that the presence or absence of an appropriate legend will be regarded as a factor in considering whether the circumstances surrounding the offering are consistent with the exemption for a non-public offering. Section 4(2) of the Act, 15 U.S.C.A. § 77d(2). The use of the legend was urged in the Releases, but is not required by the statute or regulations.

■ We cannot agree that the absence of a requirement for a notation of the restriction in the federal statute overrides § 8–204 under the doctrine of preemption. As further discussed below we feel that this important provision of the Code may be read in harmony with the federal statute.[5] Both regulations can be enforced without impairing federal superintendence of the field and thus the state statute need not give way. Florida Avocado Growers v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248; Huron Cement Co. v. Detroit, 362 U.S. 440, 446, 80 S.Ct. 813, 4 L.Ed.2d 852. We feel the Securities Act shows no intent to prevent such significant regulation by state law. See New York Dept. of Social Services v. Dublino, 413 U.S. 405, 417, 93 S.Ct. 2507, 2515, 37 L. Ed.2d 688 (Slip Opinion p. 8)

---

5. As later discussed, since only damages for the loss to the bank are being sought, no question arises as to whether carrying out the sale of the pledged securities would violate the Securities Act.

(6/21/73). Congress itself adopted the Code provision in § 8–204 for the District of Columbia some time after its enactment of the Securities Act. See D. C.Code, §§ 28:8–101, 28:8–204 (1967 ed.), 77 Stat. 732, 735. We are satisfied the federal statute should not be held to override § 8–204.

The appellees argue that the federal prohibitions against transfer of unregistered stock required and entitled them to refuse to register the transfer here, relying on Securities and Exchange Commission v. Guild Films Co., 279 F.2d 485 (2d Cir.), cert. denied, 364 U.S. 819, 81 S.Ct. 52, 5 L.Ed.2d 49, and similar cases. The argument is that if the transfer had been made, appellees might well have been charged as aiders and abettors to a violation of the Securities Act themselves. Thus they say the federal statute is a valid defense against liability for damages for refusal to register the transfer of the stock involved here.

■ We find no ground for defense to the damage claim in this theory. If the sale of the pledged shares would violate the federal statute, perhaps it could be enjoined by the Commission as in SEC v. Guild Films Co., supra, but we need not reach this question. In any event we think that the prohibition of the federal statute against carrying out certain transfers does not defeat the bank's right to damages under § 8–204 of the Code. We need not decide whether the bank here as a bona fide pledgee could enforce specifically the transfer of the collateral to the purchaser. We have only the question whether the bank is entitled to damages when the issuer asserts its own restriction which was not conspicuously noted on its stock certificate as a ground for refusing to register a transfer. We are persuaded that in these circumstances the bank is entitled to damages for its loss and that the recovery of them is not violative of the federal prohibition against transfer. See Prudential Petroleum Corp. v. Rauscher, Pierce & Co., 281 S.W.2d 457 (Tex.Civ.App.) (ref. n. r. e.). The pos-

sible unavailability of one remedy need not defeat the injured party's right to another.

Third, we consider appellees' argument that they followed the provisions of § 8–401 of the Code in refusing to register transfer of the stock and are, therefore, free from liability. The theory is based on § 8–401(e), providing in substance that the issuer is under a duty to register a transfer if it is in fact "rightful" or to a bona fide purchaser. Appellees say that the transfer would not have been "rightful" under the Securities Act and that the bank cannot come within the definition of § 8–302 of a bona fide purchaser in view of its terms and the definition of notice in § 1–201(25).

■ We need not determine whether the bank failed to come within these general provisions and definitions of the Code. The specific provisions of § 8–204 are controlling in our opinion, affording protection against a restriction not conspicuously noted on a certificate except as to a person with actual knowledge of it. And, as discussed earlier, the bank qualifies for this protection under § 8–204.

[5] Lastly appellees say that the judgment in their favor should be affirmed for failure of the bank to mitigate damages in any event. The contention is that during a period when the value of the stock continued to decline, the bank failed to furnish an opinion of counsel concerning the validity of transfer under an exemption from registration which would have permitted the transfer and avoided the loss.

We feel the argument is without merit. It is based on an alternative requiring an opinion of counsel to deal with legal questions raised by Mr. Steak's assertion of the restriction on transfer not noted on its certificate. This again involves reliance by Mr. Steak as issuer on its unnoted restriction which is made ineffective as to the bank by § 8–204. The bank is entitled to protection against the unnoted restriction by § 8–

204 and this argument against recovery for the loss is untenable in view of the Code provision.

 The appellant asks that we direct the entry of judgment for its damages. The facts necessary for a judgment appear to be covered by the stipulation and proof in the record. However, in view of its ruling on liability the trial court did not reach the damages question or consider it under the applicable state law. We feel that the trial court should determine the proper recovery.

Accordingly the judgment is reversed and the case is remanded for further proceedings and entry of judgment which the trial court finds to be proper.