# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 11, 2009

Charles R. Fulbruge III
Clerk

No. 08-50413

ARTHUR W TIFFORD, PA

Plaintiff - Appellant

v.

TANDEM ENERGY CORPORATION, a Colorado corporation; TANDEM ENERGY HOLDINGS INC, a Nevada corporation; TODD M YOCHAM; TIM G CULP; JACK CHAMBERS; MICHAEL CUNNINGHAM

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, DAVIS, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

This case concerns whether Tandem Energy Corporation ("Tandem Colorado"), Tandem Energy Holdings, Inc. ("Tandem Nevada"), Todd Yocham, Tim Culp, Jack Chambers, and Michael Cunningham (collectively "Defendants") can be held liable for conversion and civil conspiracy. We find genuine issues of fact regarding whether Plaintiff Arthur W. Tifford, PA ("Tifford"), a Florida corporation, owns a valid interest in Tandem Nevada, and whether Defendants' actions unreasonably deprived Tifford of that interest. We therefore reverse the district court's grant of summary judgment and remand for further proceedings.

I.

This dispute centers on a stock certificate in Tifford's possession. The certificate, number TE 1069 ("Certificate 1069"), represents 2.7 million Tandem Nevada shares. Defendants believe Certificate 1069 is invalid, and have refused Tifford's demand to be listed as a record owner on Tandem Nevada's books. Tifford says genuine issues of fact exist regarding the certificate's validity, and whether Tandem's refusal to transfer record ownership constitutes conversion.

The conflict arises from a corporate deal gone wrong. In 2005, the owners of Tandem Colorado agreed to sell the company. The buyers hired Ron Williams to make a deal happen. Williams hired Aritex Consultants ("Aritex"), which was owned and operated by Lyle Mortensen. Williams and Mortensen were to execute a "reverse merger," in which a publicly held shell company acquires the stock of a private company in exchange for the public company's stock. The plan was this: Tandem Texas, a private company, was to purchase Tandem Colorado and other assets. The yet-to-be-acquired shell company, Tandem Nevada, was then to purchase Tandem Texas. There was apparently no written agreement concerning the duties and compensation of Williams, Mortensen, or Aritex. Mortensen purchased a public shell company, renamed it Tandem Nevada, and named himself president, secretary, and sole director. In that capacity, he issued 20 million shares to himself in March 2005, to allow him to complete the formalities necessary to the deal. What happened next is disputed.

Tifford acknowledges that the deal did not go according to plan, but notes that a reverse merger took place. After the merger, Mortensen re-issued just over 20 million shares of Tandem Nevada. Of those, just over 17 million went to the sellers of Tandem Colorado and new investors. Three million shares went to Aritex, Mortensen's company, as compensation for expenses and services. Mortensen resigned from the positions he held in Tandem Nevada, appointing in his place certain of the Defendants. His shares were later reissued, including

into a block of 2.7 million shares represented by Certificate 1069. All stock issuances and transfers were done by Manhattan Transfer Registrar Company ("Manhattan Transfer"), Tandem Nevada's transfer agent.[1]

Defendants paint a different picture. They agree that Aritex was supposed to receive 3 million shares of Tandem Nevada for shepherding the reverse merger to a close. However, Defendants say that Williams, who is a "securities fraud felon and disbarred attorney," sold $8-9 million of the shares issued by Mortensen in a "pump and dump" scheme, with Mortensen's knowledge or complicity. Defendants also aver that Mortensen did not have the power to issue stock in Tandem Nevada in March 2005 because he was not actually a director of the company. Moreover, Williams's and Mortensen's acts allegedly caused the original buyers to back out of the deal. After Williams and Mortensen moved on, Defendants restructured the deal. They capitalized Tandem Nevada directly with the assets of Tandem Colorado, some other assets, and borrowed funds. In sum, the originally contemplated reverse merger failed, but Defendants salvaged a deal by converting Tandem Colorado into publicly held Tandem Nevada.

Defendants state that "[o]n August 25, 2005, the new Tandem Board of Directors, by unanimous resolution, and pursuant to NEV. REV. STAT. § 78.211 cancelled the 20 million stock shares, including [Certificate 1069], based on an investigation and certified opinion of counsel concluding the shares were issued without consideration and were, therefore, invalid." Most of the cancelled shares were then reissued; only the shares issued to Aritex were not. In a letter dated August 26, 2005, Tandem directed Manhattan Transfer to "not make any transfers of cancelled shares and notify us immediately if any attempt or request is made to transfer any of the cancelled shares." Defendants say that they notified Mortensen of the cancellation in a certified letter dated September 7,

---

[1] Tifford named Manhattan Transfer as a defendant in the complaint. The district court dismissed Manhattan Transfer for failure to prosecute. Tifford does not appeal this dismissal.

2005. Defendants submitted the letter as summary judgment evidence, but did not produce a certified mail receipt. Mortensen said in an affidavit that he does not recall receiving notice of the cancellation.

In April 2006, Mortensen signed a Stock Power on behalf of Aritex which purports to transfer the shares represented by Certificate 1069 to Tifford. In an affidavit, Arthur Tifford, the owner of the eponymous corporate plaintiff, states that the transfer was in partial satisfaction of a judgment entered for Tifford's client, Universal Express, Inc., in a Florida state-court lawsuit. Tifford now claims a partial interest in the shares by virtue of a contingency-fee agreement with Universal Express. Additionally, Tifford alleges he had no knowledge of Tandem Nevada's efforts to cancel the shares. In May 2006, Tifford's agent, T.D. Ameritrade, made a demand on Manhattan Transfer to have Certificate 1069 reissued in its name. Manhattan Transfer refused due to the August 26, 2005 stop order. On May 17, 2006, Tifford sent a letter to Tandem Nevada's attorneys demanding that the shares be reissued. Tandem Nevada refused.

On June 14, 2006, Tandem Nevada sued Aritex, Arthur Tifford and his corporation, Williams, Mortensen, and Manhattan Transfer in Nevada state court. Tandem Nevada sought a declaration that Certificate 1069 was invalid. All defendants but Manhattan Transfer were dismissed for lack of personal jurisdiction. On May 15, 2007, the court found that the dismissed defendants were not indispensable parties, and granted summary judgment in favor of Tandem Nevada. The court held that the shares issued by Mortensen, including Certificate 1069, were invalid and void. The court ordered Manhattan Transfer to void and refuse to transfer Certificate 1069 if such were presented to it. A separate lawsuit involving Aritex and concerning the validity of the stock is currently proceeding in a Texas state court.

Tifford filed this suit on June 12, 2007. Tifford sought a declaration of its rights in Tandem Nevada and damages in excess of $12 million for conversion

and civil conspiracy. Initially, Defendants moved to have the claim dismissed for failure to state a claim. Upon considering evidence outside of the pleadings, the district court construed Defendants' motion as one for summary judgment. However, Defendants have not filed answers to Tifford's complaint. In a written order, the court stated that the parties agreed that the conversion took place on August 25, 2005, and Tifford did not own Certificate 1069 at that time. Thus, Defendants did not deprive Tifford of a property interest, and summary judgment was proper. In the alternative, the court held that the Nevada judgment invalidating Certificate 1069 was an *in rem* judgment, and thus bound Tifford. As Tifford could not demonstrate an unlawful act, the court granted summary judgment in favor of Defendants on Tifford's civil conspiracy claim as well. Final judgment was entered and Tifford appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review a grant of summary judgment de novo. *Delta & Pine Land Co. v. Nationwide Agribus. Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001).

## A.

"The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." *Waisath v. Lack's Stores, Inc.*,

474 S.W.2d 444, 447 (Tex. 1971).[2] "[I]t is not necessary that there be a manual taking of the property in question." *Id.* However, the defendant's actions must impair the plaintiff's ownership interest. *See Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex. 1982). The plaintiff must prove that: (1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused. *See Small v. Small*, 216 S.W.3d 872, 877 (Tex. App.—Beaumont 2007, pet. denied).

In Texas, a shareholder may sue a corporation for conversion of shares. *See Rio Grande Cattle Co. v. Burns, Walker & Co.*, 17 S.W. 1043, 1046 (Tex. 1891). The first element, whether the plaintiff owns or has a right to the stock, is determined under the law of the state of incorporation. *See B & H Warehouse, Inc. v. Atlas Van Lines, Inc.*, 490 F.2d 818, 821 (5th Cir. 1974); TEX. BUS. & COMM. CODE ANN. § 8.110(a)(1) (providing that the law of the issuer's jurisdiction governs the validity of a security). The second element requires a corporate act that destroys or impairs the stock's value, such as "unreasonable refusal to transfer stock ownership. . . ." *See Rodriguez v. Ortegon*, 616 S.W.2d 946, 949 (Tex. App.—Corpus Christi 1981, no writ). Similarly, imposing unreasonable restraints on a stock's marketability can be conversion. *See Sandor Petrol. Corp. v. Williams*, 321 S.W.2d 614, 619 (Tex. Civ. App.—Eastland 1959, writ ref'd n.r.e.). The third and fourth elements, demand for return by plaintiff and refusal by defendant, may be excused if it was apparent that the defendant would not reverse its conduct. *See id.*; *see also Prudential Petrol. Corp. v. Rauscher, Pierce & Co.*, 281 S.W.2d 457, 460 (Tex. Civ. App.—Dallas 1955, writ ref'd n.r.e.).

---

[2] The parties have briefed Texas's law of conversion. Under the *Erie* rule, we must apply the substantive law of the forum state—including choice of law rules, which may dictate applying another state's laws. *See Denman v. Snapper Div.*, 131 F.3d 546, 548 (5th Cir. 1998). However, by failing to brief any other state's law, the parties have forfeited any choice of law argument. *See Kucel v. Walter E. Heller &* Co., 813 F.2d 67, 74 (5th Cir. 1987).

Tifford has shown genuine issues of fact for the elements of the conversion claim. We therefore reverse the district court's entry of summary judgment.

1.

Tifford has shown a genuine issue under Nevada law, which incorporates Article 8 of the Uniform Commercial Code ("UCC"), whether it has a valid interest in the shares. Tifford presented evidence that it obtained Certificate 1069 for value and without notice of its cancellation. *See* NEV. REV. STAT. § 104.8202(2)(a) ("A security . . . is valid in the hands of a purchaser for value and without notice of the particular defect unless the defect involves a violation of a constitutional provision."); § 104.1201(cc) ("'Purchase' means taking by sale, lease, discount, negotiation . . . or any other voluntary transaction creating an interest in property."). Tifford thus purports to be a "protected purchaser" entitled to have the transfer of shares registered on Tandem Nevada's books. *See* NEV. REV. STAT. § 104.8401. Arthur Tifford states in his affidavit that Certificate 1069 was acquired as a partial satisfaction of a judgment against Williams, and without knowledge that the shares were invalid. Defendants insist that Tifford has not given consideration for the stock because the settlement was conditional and was never recorded. Defendants also assert that Tifford had constructive notice of the worthlessness of the shares—in essence, given Williams's reputation, Tifford should have smelled a rat. The relevant Nevada statutes nowhere preclude one who acquires stock in conditional settlement of a judgment from being a "purchaser for value" or a "protected purchaser." Moreover, the questions of notice as well as adequacy and finality of consideration strike us as factual matters pertinent to "purchaser for value" or "protected purchaser" status which cannot be decided at this stage. *See, e.g.*, *Demoulas v. Demoulas*, 703 N.E.2d 1149, 1164, 1170-71 (Mass. 1998) (treating "purchaser for value" status under UCC Article 8 as issue of fact).

Defendants note that "a purchaser of a certificated . . . security acquires all rights in the security that the transferor had or had power to transfer." NEV. REV. STAT. § 104.8302(1). Because Certificate 1069 was cancelled in 2005, goes the argument, Tifford received a worthless piece of paper. There are several problems with this argument. First, Mortensen has sworn that he does not recall receiving notice of the cancellation. Defendants have not produced a certified mail receipt showing otherwise. Whether Mortensen is telling the truth is a disputed issue of material fact. Second, even if Mortensen knew of the August 2005 resolution, we are not convinced that, as a matter of law, the board's resolution cancelled the shares. As a treatise explains, "[i]f share certificates are issued illegally, or by an officer fraudulently or without authority, and the circumstances are such that they are either void or voidable, the corporation may cancel them, or they may be cancelled by a court of equity in a suit brought for that purpose by the corporation . . . ." WILLIAM MEADE FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5166 (West 2008). Whether Mortensen issued the shares "illegally," "fraudulently," or "without authority" is an open question. In the present circumstances, we cannot determine as a matter of law that the shares were void or voidable. Third, conversion is a tort concerning property rights. As such, a conversion claim is assignable. *See generally PPG Indus., Inc. v. JMB/Houston Ctrs. Partners LP*, 146 S.W.3d 79, 87 (Tex. 2004); *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 706-07 (Tex. 1996). In acquiring Certificate 1069, Tifford in essence bought the present cause of action. *Cf. Gresham v. Island City Sav. Bank*, 21 S.W. 556, 558 (Tex. Civ. App.—Galveston 1893, no writ). Finally, for reasons we explain in detail below, we are not convinced that the Nevada state court judgment binds Tifford.

Defendants next posit that Tifford lacks standing because it is not the real party in interest under FED. R. CIV. P. 17 and has a 40% interest in the shares, not an undivided interest. Mortensen transferred Certificate 1069 to Tifford, not

Universal Express (the judgment creditor), because Tifford had a contractual interest in the Florida litigation. This contractual interest gave Tifford a stake in the shares, endowing it with the status of a "real and substantial party to the controversy," as opposed a mere agent or interested bystander. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 863 (5th Cir. 2003); *see also Ensley v. Cody Res., Inc.*, 171 F.3d 315, 319-21 (5th Cir. 1999) (distinguishing between jurisdictional Article III standing and prudential "real party in interest" requirement). Moreover, forty percent of the damages sought, over $12 million, is still a "concrete and particularized" injury. *See Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007); *cf. id.* at 522 (reasoning that even when an injury is "widely shared" a litigant's individual interest is not diminished for standing purposes). The absence of other potential litigants, even a real party in interest, can be excused or cured. *See* FED. R. CIV. P. 17(a)(3). Additionally, if an indispensable party cannot be joined (because there is no personal jurisdiction or because joinder would destroy diversity of citizenship), dismissal may be appropriate. *See* FED. R. CIV. P. 19(b). As Defendants have yet to file answers in this case, such matters are better left to the discretion of the district court upon remand. Lastly, Defendants assert that, in transferring Certificate 1069 to Tifford, Universal Express violated an injunction issued by the United States District Court for the Southern District of New York. If such is the case, the proper remedy is a contempt proceeding in that court, not dismissal of this case. Tifford has raised a genuine issue of fact regarding an ownership interest in Certificate 1069.

2.

Turning to the second element of conversion, we think that there is a genuine question whether Defendants' refusal to transfer record ownership of the stock impaired Tifford's rights. The district court stated: "It is undisputed by the parties that the alleged conversion took place when Tandem Nevada's Board

of Directors cancelled the certificate on August 25, 2005." Because Tifford received Certificate 1069 in April 2006, the court held that Tifford could not prove a right to the shares at the time of the conversion. However, Tifford has consistently argued that Defendants' refusal to transfer ownership of the stock from Aritex to Tifford was conversion. This occurred in May 2006, after Tifford obtained the shares, when Manhattan Transfer refused to reissue Certificate 1069 pursuant to the August 26, 2005 stop order. It is well-established that an unreasonable refusal to acknowledge a lawful transfer of corporate stock is conversion. *See Burns*, 17 S.W. at 1046. In *Burns*, the Supreme Court of Texas sustained a judgment of conversion in favor of a transferee of a one-quarter interest in the defendant corporation where the defendant refused to recognize the transferee's interest. *Id.* Despite the fact that the corporations records and stock book were destroyed in a fire, the transferee had obtained "at least the equitable title to the stock or interest" transferred to him. *Id.* at 1045. In addition, as noted above, a cause of action for conversion inheres in a plaintiff's entitlement to the property. Even if the conversion occurred in August 2005, whatever cause once belonged to Aritex now belongs to Tifford.

Defendants next say that Tandem Nevada did not have to transfer record ownership because Tifford has not complied with 17 C.F.R. § 230.144. This rule limits the public sale of unregistered stock unless the stock is first registered with the SEC. *See, e.g.*, *McDonald v. C.I.R.*, 764 F.2d 322, 323 n.3 (5th Cir. 1985). The district court did not have an opportunity address whether the rule applies. We note initially that the transfer to Tifford was not a public sale, and thus likely falls outside the purview of the rule. Moreover, even if the rule does apply, a restriction on subsequent public sales may diminish the fair market value of shares, but such a restriction does not render shares worthless. *See id.* at 323. Thus, for summary judgment purposes, Tifford's alleged non-compliance with § 230.144 does not undermine its conversion claim.

Defendants suggest that their refusal to transfer ownership was excused because it was unclear whether Tifford had a legitimate right to the stock. A good-faith refusal to return property in order to resolve a doubtful matter may or may not excuse conversion. *Compare Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App.—El Paso 1993, no writ) ("A refusal to deliver property on request may be justified in order to investigate the rights of the parties, and no conversion results if such refusal is made in good faith to resolve a doubtful matter."), *with Rodriguez*, 616 S.W.2d at 949 ("The defense of good faith is not available to a party to excuse his actions in a conversion suit."). In any case, the reason "must be distinctly stated to the party demanding possession, however, or the right to withhold the property is lost. Any reasons for refusing to turn over the property which are not mentioned at the time of the refusal are lost and may not be raised later." *Whitaker*, 850 S.W.2d at 760. Defendants raise this defense in their appellate brief, but it is unclear whether they "distinctly stated" the basis for refusal in response to Tifford's demands to transfer the stock. Thus, the defense may have been forfeited. Even if Defendants have preserved this argument, it was never addressed by the district court. Finally, whether Tandem Nevada's refusal to transfer the shares was done in good faith is inherently a fact question which we may not address at this time.

3.

Tifford also satisfies its burden at the summary judgment stage with regard to the third and fourth elements of conversion. Tifford made a request via its agent, T.D. Ameritrade, to have Certificate 1069 reissued in Tifford's name. Tandem Nevada's agent, Manhattan Transfer, refused. Certificate 1069 was apparently never physically delivered to Manhattan Transfer, but we do not find this problematic. In light of Tandem Nevada's unequivocal refusal to transfer record ownership, delivery of the certificate would have been an empty formality. Texas law does not require such an act. *See Prudential Petrol.*, 281 S.W.2d at

460; *see also Williams*, 321 S.W.2d at 619 (excusing failure to demand transfer, as "[t]o have done so would have been a useless thing since the corporation had already advised Williams and prospective purchasers of his stock that such a transfer would not be recognized").

Tifford has shown a genuine issue of fact as to each element of conversion. Given the questions of fact which abound in this case, we must reverse the district court's judgment unless there is another ground supported by the record. *See Holtzclaw*, 255 F.3d at 258. With that in mind, we turn to the district court's alternate holding.

B.

In an alternate holding, the district court concluded that the Nevada state court judgment was *in rem*, and thus binds litigant and stranger alike. Specifically, the district court noted that: (1) Tifford was not an indispensable party, and (2) the "proceeding was *in rem* pursuant to NEV. REV. STAT. § 104.811(1)(a)." We disagree.

We must give the judgment of the Nevada court the same effect it would have in subsequent litigation in Nevada. *See* 28 U.S.C. § 1738; *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). The Nevada judgment does not purport to be *in rem*. Moreover, the statute the court likely meant to cite, NEV. REV. STAT. § 104.8110(1)(a)—as there is no § 104.811(1)(a)—is the choice-of-law provision of UCC Article 8. The Section says nothing about whether a judgment regarding the validity of a security is *in personam* or *in rem*. In the absence of legal authority or a clear indication from the judgment itself, we cannot hold that the Nevada court's judgment was *in rem*. *Cf.* RESTATEMENT (SECOND) OF JUDGMENTS § 30 ("A valid final judgment in an action based only on jurisdiction to determine interests in a thing: (1) Is conclusive as to those interests with regard to all persons, if the judgment purports to have that effect (traditionally described as 'in rem') . . . .").

Defendants also argue that the Nevada judgment should bind Tifford under the doctrines of res judicata and collateral estoppel. For these doctrines to apply in Nevada, "the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation." *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994). At the time of judgment, Tifford had been dismissed for lack of personal jurisdiction, and thus was not a "party." *Cf.* RESTATEMENT (SECOND) OF JUDGMENTS § 34(1) ("A person who is named as a party to an action and subjected to the jurisdiction of the court is a party to the action."). The judgment itself focuses on whether Manhattan Transfer must comply with or disregard requests to transfer certificates issued by Mortensen. We see no reason to conclude (nor have Defendants submitted a rationale) that Tandem Nevada and Manhattan Transfer had adverse interests, that the validity of the shares was actually litigated, that Manhattan Transfer was in privity with Tifford, or that Manhattan Transfer adequately represented Tifford's rights. *See Tarkanian*, 879 P.2d at 1191-92; *see also Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1265-66 (5th Cir. 1990). We therefore hold that the Nevada judgment does not bind Tifford under the doctrines of res judicata or collateral estoppel.

In sum, we feel compelled to reverse the district court's entry of summary judgment in favor of Defendants on Tifford's conversion claim.

## C.

We also reverse the grant of summary judgment on Tifford's civil conspiracy claim. In Texas, a civil conspiracy is a combination "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (citation omitted). The elements are: "(1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt, unlawful acts; and (5) proximately resulting in injury." *Id.* A defendant's liability is derivative of an

underlying tort; without independent tortious conduct, there is no actionable civil conspiracy claim. *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 381 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Tifford's civil conspiracy claim lives or dies with its conversion claim. The district court correctly noted that without a predicate unlawful act, there is no cause of action for civil conspiracy. *See id.* However, if there is an issue of fact on conversion, and Tifford shows evidence of an agreement by Defendants to commit the acts comprising conversion, then there is an issue of fact on conspiracy. *See Watts v. Miles*, 597 S.W.2d 386, 388 (Tex. Civ. App.—San Antonio 1980, no writ). Here, it is undisputed Defendants agreed by corporate resolution to cancel Certificate 1069 and the 2.7 million shares it represents. This allegedly destroyed the value of the shares. Because there is a genuine issue on conversion and the lawfulness of Defendants' actions, summary judgment is inappropriate on Tifford's conspiracy claim.

## III.

We hold that there are genuine issues of fact on claims by Arthur W. Tifford, P.A. for conversion and civil conspiracy. We also hold that Tifford is not bound by the Nevada state court judgment cancelling Certificate 1069. We therefore reverse the district court's judgment and remand for further proceedings. We express no opinion as to the ultimate merit of Tifford's claims.

REVERSED and REMANDED