**Sanford BRASS, et al., Plaintiffs,**

v.

**AMERICAN FILM TECHNOLOGIES, INC., Defendant.**

**No. 91–CIV–5395 (LJF).**

United States District Court, S.D. New York.

Dec. 18, 1991.

Raymond Connell, Connell Losquadro & Zerbo, New York City, for plaintiffs.

Robert Knuts, Fennell & Minkoff, New York City, for defendant.

## ORDER AND OPINION

FREEH, District Judge.

Plaintiff Sanford Brass ("Brass") initiated this action in July 1991, to recover losses suffered when defendant American Film Technologies, Inc. ("AFT") failed to issue warrants for 65,000 shares of unrestricted AFT stock allegedly purchased by Brass in 1987 and 1989.[1] AFT moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6). Because both parties relied on evidence outside the complaint in addressing the motion to dismiss, on October 28, 1991, the Court, on its own initiative, converted that motion into one for summary judgment, and the parties submitted supplemental briefs. For the reasons stated at oral argument and below, AFT's motion for summary judgment is denied in part and granted in part.

## FACTS

In April 1987, Brass attended a meeting with George Jensen ("Jensen"), Chairman and Chief Executive Officer of AFT, and Dennis Abert ("Abert"), an AFT consultant, to discuss Brass's possible purchase of AFT stock. (Brass Aff. ¶ 3). AFT had previously allocated 65,000 warrants for AFT stock to Abert, some of which Abert, apparently in need of cash, desired to sell. (*Id.*). According to Brass, neither Jensen nor Abert ever informed him that the shares of stock to be received upon exercise of the warrant purchase rights were originally part of a private placement and thus were not freely transferable. (Brass Aff. ¶ 3). As a result, after this meeting, Brass purchased 10,000 of the warrants allocated to Abert, paying $1.00 per warrant. (Brass Aff. ¶ 4).[2]

At the time of his initial warrant purchase, Brass did not receive certificates or any other formal documents representing his purchase of the 10,000 warrants. (Brass Aff. ¶ 6). Brass did, however, receive a letter from Jensen dated May 7, 1987, "confirming" that Brass would receive "warrants on AFT common stock from those allocated to ... Abert." (Brass Aff.Ex. A). Jensen further stated that the 10,000 warrants "are exercisable at $2.00 per share, and are exercisable for a five year period." (*Id.*).

Subsequent to this purchase, Jensen continued to solicit Brass's business, sending him the preliminary prospectus for a public offering of AFT stock in July 1987 (Brass Aff. ¶ 7, Hartel Aff. ¶¶ 4–5), as well as other prospectuses. (*See* Brass Aff.Ex. C, Hartel Aff. ¶ 6). Although Brass did not purchase any additional AFT stock during the public offering, in June or July 1989, he did purchase the remaining 55,000 warrants allocated to Abert. (Brass Aff. ¶ 9). As part of that sale, Abert provided Brass with documents evidencing Abert's entitlement to the warrants, including a document labelled a "Stock Purchase Right." (Brass Aff.Ex. D). In September 1989, AFT faxed Brass a copy of his own Stock Purchase Right form for 65,000 shares of AFT stock. (Brass Aff.Ex. E). That document states that the "stock purchase right is transferable only with the consent of [AFT]," but does not mention the transferability of the shares to be purchased upon exercise of the purchase right. (*Id.*).

In April 1990, Brass decided to transfer his AFT warrants to the other plaintiffs in this action. In order to effect that transfer, AFT required the original warrant document. (Brass Aff. ¶ 15). When informed that Brass did not have an original doc-

**1.** The case was originally filed in New York Supreme Court, but was removed by AFT to this Court on August 7, 1991.

Joyce Mericle Brass, Gustave E. Chew, Jr., Fred Suther, John Tomaszewski, and Stephen D.E. Mitchell as Trustee for Giles David Mitchell and Neville Arthur Mitchell are also plaintiffs in this action. Brass transferred the warrants to these parties in April 1990. (Brass Aff. ¶ 14).

**2.** Except where specifically noted, AFT does not dispute the facts as stated here. Indeed, the only evidence submitted by AFT in support of its motion for summary judgment is an affidavit from its Secretary and General Counsel, Arthur P. Hartel, Jr. ("Hartel"). However, Hartel apparently had no direct involvement with the sale of the warrants.

ument, AFT forwarded him a second Stock Purchase Right, reflecting the one-for-two reverse split that AFT shares had undergone in the interim. (Brass Aff. ¶ 17, Hartel Aff. ¶ 10). A letter sent with this second Stock Purchase Right stated that "the common stock will remain restricted for two years after the date of exercise of the purchase rights." (Brass Aff.Ex. H, Hartel Aff. 10). Brass contends that this letter was the first time he received notice that his warrants covered restricted, rather than freely transferable, AFT stock. (Brass Aff. ¶ 17). AFT disagrees and argues that it notified Brass of the restriction on transferability as early as September 1989. (Hartel Aff. ¶ 9, Ex. I).

## DISCUSSION

Under Fed.R.Civ.P. 56, summary judgment is only appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." In determining motions for summary judgment, the Court must view the evidence in the light most favorable to the party opposing the motion—in this case, Brass. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Although the precise nature of his claims is not apparent from the face of the complaint, in opposing the motion for summary judgment, Brass asserts that AFT's conduct constitutes conversion, breach of contract, securities fraud, common law fraud, and a violation of New York Uniform Commercial Code § 8–204. We will address the sufficiency of each of those claims individually.

### 1. *Conversion/U.C.C. § 8–204*

■ AFT argues that Brass cannot prove a claim for conversion because he cannot prove "title" to the property allegedly converted. (Motion at 3). It is well-established that in order to prove a conversion claim, a plaintiff must show (1) title to the property converted, or his right to possession of that property; (2) an act of conversion by the defendant; and (3) damages

caused by the conversion. 23 N.Y.Jur.2d, *Conversion and Action for Recovery of Chattel* § 78 at 314–15.

■ Relying on case law interpreting § 8–204 of the Uniform Commercial Code (the "U.C.C."), Brass contends he has a right to possess warrants covering unrestricted AFT stock, and thus, a legitimate claim for conversion. Section 8–204 provides that "[a] restriction on transfer of a security imposed by the issuer even though otherwise lawful is ineffective against any person without actual notice of it unless ... the security is certificated and the restriction is noted conspicuously thereon ..." U.C.C. § 8–204. The Tenth Circuit has interpreted the statute's reference to restrictions "imposed by the issuer" to include restrictions on transferability arising by operation of the Securities Act of 1933 (the "33 Act"), and suggested that failure to comply with the U.C.C.'s notice requirements gave rise to a claim for conversion:

> We are convinced ... that § 8–204 [requires] that the issuer conspicuously note the restriction on the certificate for the protection of others. The bank as pledgee [of the securities] was among the persons protected generally by § 8–204 against a restriction not conspicuously noted on the security, except as to a person with actual knowledge. *The wrongful refusal to transfer gave rise to a right to sue as for conversion by the bank as transferor.* We conclude that under the facts as found and shown by [the] record, the state law in § 8–204 of the Code supports the bank's right to recover against the issuer which failed to comply with the strict requirement of the statute.

*Edina State Bank v. Mr. Steak, Inc.*, 487 F.2d 640, 644 (10th Cir.1973), *cert. denied*, 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123 (1974) (emphasis added).

The parties do not dispute that the Stock Purchase Right form provided to Brass did not contain the notice required by § 8–204. But a violation of that provision does not automatically give rise to a claim for conversion. This Court has previously considered *Edina* and has limited its holding

to the particular facts presented. *See De-Witt v. American Stock Transfer Co.*, 440 F.Supp. 1084, 1087 (S.D.N.Y.1977) (noting that no other case had followed *Edina*, and concluding that it should not be extended "beyond the context in which it was decided—a private placement by the issuer of its own securities, a situation which clearly gives the issuer an opportunity to legend the shares."). Because the warrants in this case were originally issued as part of a private placement, however, Brass argues that AFT had an adequate opportunity to include the requisite notice on its Stock Purchase Right form. Thus, even with the limitation imposed by *DeWitt*, Brass contends that he is entitled to sue for conversion.

In order to find that the bank had a right to sue for conversion in *Edina*, the Tenth Circuit necessarily found that the bank, as an innocent pledgee of the securities, had the right to possess those securities based on the issuer's failure to comply with § 8–204. With due respect to the courts in *Edina* and *DeWitt*, however, we do not read § 8–204 to require issuers of securities to include notices regarding limitations on transfer arising under the federal securities laws.[3] The language of the statute specifically refers to restrictions "imposed by the issuer." Because the restrictions on transferability of the AFT shares, like those in *Edina*, are imposed by the federal securities laws and not AFT, AFT did not violate § 8–204 by failing to note those restrictions conspicuously on the face of the Stock Purchase Right form. Thus, Brass has no right to possess warrants covering unrestricted securities, and his claim for conversion is insufficient as a matter of law. Accordingly, that claim must be dismissed.

### 2. *Breach of Contract*

■ Brass also argues that AFT's conduct constitutes a breach of contract because the Stock Purchase Right issued to him was consistent with his purchase of warrants for unrestricted shares of AFT stock and because AFT "repudiated [that] contract." (Opposition at 32). AFT correctly notes, however, that Brass purchased the warrants at issue from Abert, not from AFT. Accordingly, the only "contract" possible would be between Brass and Abert, not Brass and AFT. The document labelled a "Stock Purchase Right" merely evidenced the transfer of rights from Abert to Brass, it did not implement that transfer. Brass's breach of contract claim is likewise insufficient as a matter of law, and thus is dismissed.

### 3. *Securities Fraud*

■ Although Brass's opposition papers make much of AFT's failure to comply with Rule 144(d) under the 33 Act, 17 CFR § 230.144(d) (Opposition at 6–9, 24), the crux of Brass's securities fraud claim[4] seems to be that AFT violated Section 10(b) of the Securities Exchange Act of 1934 (the "34 Act") and the rules promulgated thereunder. Rule 10b–5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

---

**3.** *Edina* is also distinguishable from this case because it involved the applicability of § 8–204 to shares of stock themselves rather than derivative securities such as the warrants here. Even if the Court were to adopt *Edina*'s holding that § 8–204's legending requirements apply to restrictions on transfer arising out of the federal securities laws, we would decline to extend that rule to warrants or other derivative securities.

**4.** As noted at oral argument, Brass's complaint does not include either a securities fraud or common law fraud claim. Because the factual allegations contained in the complaint would support those claims, however, Brass is granted leave to amend that pleading.

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. [17 C.F.R. § 240.10b.5].

■ Although Brass does not describe his 10b–5 claim in much detail, presumably he grounds such a claim on AFT's sending him the Stock Purchase Right and other documents, such as Jensen's letter, which failed to disclose that the warrants purchased by Brass covered only restricted stock. Brass's version of his original meeting with Jensen and Abert and the documents submitted suggest that Jensen and AFT did act to defraud Brass. However, little to no discovery has been conducted to date, and numerous questions remain regarding when, if ever, AFT notified Brass that his warrants covered only restricted stock. Brass claims he was not given that information until April 1990, while AFT claims that, at minimum, Brass received a letter in September 1989 notifying him of the applicable restrictions.[5] Given these disputes on material factual issues, summary judgment is not appropriate on the securities fraud claim.

### 4. *Common Law Fraud*

The same unresolved factual issues relevant to Brass's securities fraud claims apply to Brass's claim of common law fraud. Accordingly, summary judgment will not enter on that claim either.

For the foregoing reasons, Brass's claims grounded on conversion or breach of contract are dismissed. However, AFT's motion for summary judgment is denied with regard to Brass's claims for securities and common law fraud.

SO ORDERED.

---

**5.** Brass contends he never received any of the "disclosure" documents provided by AFT to Abert, or the September 1989 letter. (Brass Aff. ¶ 26).