**Joya COLON–BEREZIN, Plaintiff,**

v.

**Rudolph GIULIANI, Mayor of the City of New York, in his individual and official capacities, New York City Police Department, Howard Safir, Commissioner of the New York City Police Department, in his individual and official capacities, the City of New York, and Michael Pappas, Defendants.**

**No. 98 Civ. 4616(JES).**

United States District Court,
S.D. New York.

March 17, 2000.

Paul A. Shneyer, P.C., New York City, for Plaintiff, Paul A. Shneyer, of counsel.

Michael D. Hess, Corporation Counsel of the City of New York City, for Defendants, Daniel McCray, Assistant Corporation Counsel, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Joya Colon–Berezin ("Berezin") brings this action against defendants Rudolph Giuliani, the New York City Police Department, Howard Safir, the City of New York, and Officer Michael Pappas alleging, *inter alia*, that defendants' truancy policy violated her Fourth Amendment rights under 42 U.S.C. § 1983. Defendants move to dismiss plaintiff's amended complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure,[1] or in the alternate for partial summary judgment pursuant to Rule 56, arguing that plaintiff fails to state a claim and that defendant Pappas is entitled to qualified immunity. Plaintiff opposes defendants' motion, and cross-moves for partial summary judg-

ment. For the reasons stated below, defendants' motion is granted in part and denied in part, and plaintiff's cross-motion is denied.

## BACKGROUND

The following facts, unless otherwise noted, are not in dispute. At approximately 9:20 a.m. on May 28, 1998, plaintiff entered the Broadway IRT subway station located at 116th Street and Broadway in order to travel to her first class at LaGuardia High School which began at approximately 9:38 a.m. *See* Amended Complaint ("Compl.") at ¶¶ 19–20; Defendants' Statement of Undisputed Facts Pursuant to Rule 56.1 ("Def. 56.1 Stmt.") at ¶ 1. While waiting to board the subway, Pappas, a lieutenant with the New York City Police Department, approached Berezin and asked her where she was going. *See* Compl. at ¶¶ 23–24; Def. 56.1 Stmt. at ¶ 4. Berezin told Pappas that she was going to her first class at her high school. *See* Compl. at ¶ 25; Def. 56.1 Stmt. at ¶ 4. Pappas asked to see her student identification card, Metro Card, and her school schedule. *See* Compl. at ¶ 26; Def. 56.1 Stmt. at ¶ 5. Berezin produced her student identification card and her Metro Card, but was unable to show Pappas her program card which, incidently, would have verified Berezin's story that her first class started at third period. *See* Compl. at ¶ 27; Plaintiff's Notice of Cross–Motion at Exhibit ("Ex.") D; Def. 56.1 Stmt. at ¶ 5. After reviewing these documents, Pappas questioned Berezin further. The parties disagree as to the scope of Pappas's questions.

Although he had no specific recollection of the incident with plaintiff, Pappas's practice was to further question students about their absence from school when they failed to produce documentation that verified their explanation for nonattendance.[2]

---

1. Defendants fail to specify which section of Rule 12 they rely on in moving to dismiss plaintiff's complaint. Since defendants challenge the sufficiency of plaintiff's complaint, the Court construes defendants' motion pursuant to Rule 12(b)(6).

2. The documentation usually took the form of the student's class card. Other forms of documentation included, for example, a letter from a parent or doctor explaining the student's nonattendance.

*See* Deposition of Officer Michael Pappas dated February 24, 1999, attached to Plaintiff's Notice of Motion at Ex. H at 55–57, 64–71. Typically, Pappas would ask students about when they were supposed to be in school, where they were coming from, and generally inquire of them to test the credibility of their explanations. *See id.* at 70. If they were unable to provide an adequate explanation for their absence or gave evasive answers to his questions, Pappas would treat the students as truant and transport them to their school. *See id.*

At her deposition, plaintiff testified that Pappas, after she failed to produce her program card, "inquired further" about the whereabouts of her program card, but that the questions did not get "deeper" than that. *See* Deposition of Joya Colon–Berezin ("Berezin Dep.") dated October 8, 1998, attached to Declaration of Daniel McCray in Support of Motion for Summary Judgment at 20. When pressed at the deposition about the specific questions that Pappas asked, plaintiff ultimately had to conclude that she could not remember. *See id.* In addition to her deposition testimony on the issue, plaintiff supplied the Court with a sworn affidavit in support of her cross-motion for summary judgment, wherein she admits that Pappas also questioned her regarding when her first class began. *See* Affidavit of Joya–Colon Berezin dated August, 1999, at ¶ 19. Plaintiff told Pappas that her first class started at 9:38 a.m. *See id.* Apparently dissatisfied with her answers, Pappas prevented plaintiff from boarding the train. *See id.* at 20.

Thereafter, Pappas directed plaintiff to stand against a wall while he and other officers continued questioning other students suspected of truancy. *See* Compl. at ¶ 29; Def. 56.1 Stmt. at 6–7. Some time later, the officers transported plaintiff and the other detained students to their respective schools. Plaintiff's detention lasted approximately two hours. *See* Compl. at ¶ 38; Def. Stmt. 56.1 at ¶ 38; Def. Stmt. at 7.

Plaintiff's detention occurred pursuant to the New York City Board of Education's "Truancy Intervention and Turnaround Program" ("Program"). *See* Plaintiff's Notice of Cross–Motion at Ex. E. The Program is a collaborative effort between the Board of Education and the New York City Police Department. *See id.* The Program's goal is to identify truant students and return them to their respective schools in an effort to insure that they attend school regularly in the future. *See id.* The Program instructs the assigned police officers to patrol streets during school hours, pick up students who appear to be truant, inquire about their absence from school, detain those that are truant and release those that are legally absent from school. *See id.*

Plaintiff's allege that defendants' policy is illegal and unlawful because it is racially motivated as applied, and that defendants have failed to train and supervise its officers to avoid the illegal detention of students. *See* Compl. at ¶¶ 4, 31, 59. Defendants, of course, deny that this policy is racially motivated or that it has failed to adequately train and supervise their employees from illegally detaining students. *See* Answer at ¶¶ 4, 31.

## DISCUSSION

In considering a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must examine the complaint liberally and draw all reasonable inferences in favor of the non-moving party. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). A claim should be dismissed only if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Brass,* 987 F.2d at 150 (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Thus, the Court must consider the factual allegations in the

complaint as true and grant the motion to dismiss only if the moving party is entitled to relief as a matter of law. *See id.*

Plaintiff alleges that defendants violated the protections afforded her under the Fourth Amendment of the United States Constitution by detaining her at the subway terminal without a warrant or probable cause.[3] Defendants argue that the Court should dismiss plaintiff claims for false imprisonment and assault and battery because the complaint sufficiently alleges that defendant Pappas had probable cause to detain plaintiff as a truant. Moreover, defendants assert that defendants' equal protection claim must .be dismissed because plaintiff has failed to sufficiently allege that their conduct was racially motivated. Defendants also contend that plaintiff's claims for conspiracy under 42 U.S.C. § 1985(3) and municipal liability predicated on defendants' policy of detaining truants based on their race must be dismissed for failure to plead them with particularity. Finally, defendant Pappas argues that he is entitled to qualified immunity because he had probable cause to make the detention, and even in the absence of probable cause, his good faith belief that probable cause existed entitles him to qualified immunity.

■ The Court disagrees with defendants that the complaint fails to adequately allege that Pappas arrested plaintiff without probable cause. Giving plaintiff's allegations the benefit of every reasonable inference, the Court must conclude that plaintiff's failure to produce her program card, without any further meaningful inquiry by Officer Pappas as to her nonattendance is insufficient to establish that she was truant as a matter of law. The fact that plaintiff was on a subway platform after school had started is not dispositive because plaintiff alleges, and defen-

dants concede, that Pappas was aware that some students did not start school until later in the day. Moreover, even if the Court were to treat defendants' motion to dismiss as a motion for summary judgment on the merits, and credit Pappas's testimony regarding his normal practice of questioning a student further when the student failed to produce a program card, the Court would at best have conflicting factual testimony since plaintiff testified that Pappas inquired only about her failure to produce her program card and about the starting time of her first class. This factual discrepancy precludes the Court from granting summary judgment since it is directly relevant and material to the question of whether Pappas had probable cause to make the detention based on plaintiff's responses to his questions.

■ The Court must also deny defendants' motion to dismiss the conspiracy and equal protection claims based on defendants' purported policy of detaining minority students because plaintiff sufficiently alleges that such a policy exists. *See* Compl. at ¶¶ 4, 31, 58–61. Nor can the Court grant defendants' motion for partial summary judgment with respect to these allegations because plaintiff testified at her deposition that she witnessed defendants detaining minority students while similarly situated white students boarded the subway train unmolested. *See* Berezin Dep. at 29–31. This testimony obviously creates a disputed issue of material fact as to the existence of a truancy policy that targets minority students. In sum, since the allegations in plaintiff's complaint are sufficient to survive a motion to dismiss, and her deposition testimony creates a material issue as to the existence of defendants' allegedly discriminatory policy, the Court must deny defendants' motions to dismiss

---

**3.** Since the parties assume that probable cause is the appropriate standard by which to evaluate the legality of plaintiff's detention, an assumption that is not free from doubt, the Court does not address this issue. *Cf. In the Matter of Shannon B.*, 122 A.D.2d 268, 269,

505 N.Y.S.2d 179, 180 (2nd Dep't 1986) (Noting in a case evaluating the legality of a detention of student suspected of truancy that the Supreme Court has "employed special standards to determine the legality of government intrusion upon [a student's] rights").

and for partial summary judgment on the merits of these allegations.

The final issue for the Court to consider is plaintiff's cross-motion for summary judgment. To be entitled to summary judgment, plaintiff must demonstrate that Officer Pappas detained her without probable cause to believe that she was truant. Here, plaintiff alleges that Pappas approached her after school was in session and asked her for her school schedule to verify the starting time of her first period class. At the time, Pappas was unaware that plaintiff's classes did not actually start until sometime later, although he may have been aware generally that students' classes start at different times. Plaintiff failed to produce her program card, and Pappas inquired further of plaintiff, asking her about the whereabouts of her program card and the starting time of her first class. Only after plaintiff was unable to produce her program card or explain her failure to produce it, did Pappas detain plaintiff as a suspected truant. On these facts, the Court is not persuaded that plaintiff has established a lack of probable cause as a matter of law.

In any event, even assuming arguendo that plaintiff has met her burden in that regard, the facts referred to above are more than sufficient to justify a finding that reasonable police officers could disagree as to the existence of probable cause. *See Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir.1995). That circumstance

in itself requires the Court to sustain Pappas's motion to dismiss [4] on the basis of qualified immunity.[5] Any other conclusion would have to rest on the unacceptable assumption that a police officer is required to accept the oral statement of a student as credible in a truancy case.

### CONCLUSION

For all of these reasons, defendants' motion to dismiss, or in the alternative for partial summary judgment, is denied in part, and granted in part. Plaintiff's cross-motion for summary judgment is denied. The Clerk of Court is directed to enter judgment in favor of Officer Pappas on the basis of qualified immunity.[6]

It is **SO ORDERED**

---

4. The Court finds it appropriate to convert defendants' motion to dismiss plaintiff's complaint against defendant Pappas on the grounds of qualified immunity as a motion for summary judgment. *See Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 690 (2d Cir.1990). This is appropriate since the Court finds that the plaintiff has had a reasonable opportunity to oppose such a motion given that discovery is closed in the instant matter, plaintiff has briefed the issue, supplied the Court with all relevant facts in opposition, and has cross-moved for summary judgment.

5. This is especially true since there is no federal caselaw on the issue, and all of the caselaw from the New York State courts support

the practice of a police officer detaining a student suspected of truancy. *See In the Matter of Shannon B.*, 70 N.Y.2d 458, 522 N.Y.S.2d 488, 517 N.E.2d 203 (1987) (holding that police officer had authority to detain suspected truant where school was in session and student could not provide adequate explanation for absence); *see also In the Matter of Michael C.*, 264 A.D.2d 842, 695 N.Y.S.2d 423 (2nd Dep't 1999); *Matter of D'Angelo H.*, 184 A.D.2d 1039, 584 N.Y.S.2d 699 (4th Dep't 1992); *In the Matter of Devon B.*, 158 A.D.2d 519, 551 N.Y.S.2d 283 (2nd Dep't 1990).

6. The Court has not considered whether the other defendants are entitled to qualified immunity since they have not moved on that ground.